IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE TATUM, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 2:13-CV-01814 |
| v. ) | |
| ) | Chief Magistrate Judge Lisa Pupo |
| NATIONAL FOOTBALL LEAGUE; ) | Lenihan |
| NFL FILMS, INC.; and NFL ) | |
| PRODUCTIONS, LLC, ) | ECF No. 12 |
| ) | |
| Defendants. | |

**OPINION**

LENIHAN, Chief M.J.

Currently before the Court for disposition is the Motion to Transfer (ECF No. 12) pursuant to 28 U.S.C. §1404(a) filed by Defendants the National Football League, NFL Films, Inc., and NFL Productions, L.L.C..

For the reasons set forth below, the Court will grant Defendants' motion to transfer venue to the United States District Court for the District of Minnesota.

**I.     BACKGROUND INFORMATION & PROCEDURAL HISTORY**

Plaintiffs are either retired NFL football players or the heirs and assigns. The Plaintiffs are among the 2,116 former NFL players who were successfully excluded from the class action settlement group created in early 2013 by *Dryer v. Nat'l Football League*, 689 F. Supp. 2d 1113 (D. Minn. 2010).

Judge Magnuson of the United States District Court for the District of Minnesota presided over *Dryer*, which involved, like the action at hand, former NFL players asserting claims against the NFL Defendants for false-endorsement under § 43(a) of the Lanham Act,

right-of-publicity claims under multiple States' laws, and unjust enrichment. While *Dryer* was pending, several similar suits were filed in the District of Minnesota. All were transferred to Judge Magnuson as related cases and eventually consolidated with *Dryer*.

There are currently four *Dryer* opt-out cases pending in three different federal districts, with the most advanced proceeding in the District of Minnesota. In that action, which was ordered to be trial ready by June, 2014, three of the original named plaintiffs from *Dryer* are pursuing their individual claims against Defendants: the National Football League, NFL Films, Inc., and NFL Productions, L.L.C. (collectively, "the NFL Defendants"). The Special Master in the *Dryer* opt-out action (No. 09-CU-02182, D. Minn) has stated that the trial would not go on as scheduled and has extended the schedule. (ECF No. 20.) This is likely to allow for possible consolidation in the event that the actions before this Court and the *Culp* opt-out action, which deals with substantially similar claims and plaintiffs in New Jersey, are transferred.[1]

Plaintiffs filed their case in this District on December 23, 2013. Defendants filed a Motion to Transfer venue to the United States District Court for the District of Minnesota and a supporting memorandum on February 3, 2014 (ECF Nos. 12-13), and Plaintiffs filed a response and supporting brief in opposition of Defendants' Motion to Transfer on February 18, 2014 (ECF No. 16). The NFL Defendants filed a reply brief on March 6, 2014 (ECF No. 20).

## II. TRANSFER OF VENUE UNDER 28 U.S.C. §1404(a)

### A. APPLICABLE LAW

The district court is vested with broad discretion in determining whether transfer of venue is appropriate. *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973) (citations

---

[1] The *Culp* opt-out action refers to *Culp v. NFL Productions LLC d/b/a NFL Films*, No. 13-cv-04999, D.N.J. (Camden). It was voluntarily dismissed without prejudice on 09/06/13 pursuant to a "Memorandum and Order" issued by Judge Paul A. Magnuson in the District of Minnesota.

omitted); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). In considering a motion to transfer venue under §1404(a), the court applies a two-part inquiry. *Mitel Networks Corp. v. Facebook*, Inc., 943 F.Supp. 2d 463, 467 (D.Del. 2013). First, the court must determine whether the action could have been brought originally in the transferee forum, that is, whether venue in the transferee district is proper. *Id.*; *Stillwagon v. Innsbrook Golf & Marina, LLC*, 2013 WL 1180312, at *24 (W.D. Pa. Mar. 20, 2013). Second, the court must apply the balancing test set forth in *Jumara*, which requires the weighing of a number of public and private interests to determine whether the transferee forum "would best serve the convenience of the parties and witnesses as well as the interests of justice." *Mitel Networks*, 943 F.Supp. 2d at 467 (citing *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F.Supp. 2d 718, 723-24 (D.Del. 2012)). The moving party bears the burden of demonstrating that transfer of venue is appropriate at each step of the inquiry. *Id.* (citing *Jumara*, 55 F.3d at 879-80).

The Court must consider the factors delineated by the court of appeals in *Jumara*:

> In ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." 15 Wright, Miller & Cooper § 3847. While there is no definitive formula or list of the factors to consider, *see* 1A Pt. 2 Moore's ¶ 0.345[5], at 4363, courts have considered many variants of the private and public interests protected by the language of § 1404(a).

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the

3

>  extent that the files could not be produced in the alternative forum).
>
>  The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

55 F.3d at 879-80 (internal citations omitted).

### B.    ANALYSIS

#### 1.    Venue

It is clear, and the parties do not dispute, that these actions could have originally been brought in the District of Minnesota, as that district has personal jurisdiction over this matter and venue would be proper there because the NFL regularly transacts business in Minnesota, Plaintiffs have played in NFL games in Minnesota, and some of the claims arise from NFL footage shown or filmed in Minnesota. Thus, the NFL Defendants have met their burden under the first prong of the two-part inquiry.

The question then turns to whether transfer "would best serve the convenience of the parties and witnesses as well as the interests of justice." *Mitel Networks*, 943 F.Supp. 2d at 467 (citing *Smart Audio Techs*, 910 F.Supp. 2d at 723-24). The *Jumara* balancing test requires that a number of private and public interests be weighed to determine whether transfer is appropriate. *Jumara*, 55 F.3d at 883.

#### 2.    The Presence of an Earlier-Filed, Related Case in Minnesota

The presence of an earlier-filed, related case in Minnesota is an important factor for the Court to consider when determining whether a transfer of venue is appropriate. The interests of

justice are best served when judicial resources are utilized in such a way that concurrent, duplicitous litigation in two different districts is avoided. The NFL Defendants assert that the presence of an earlier-filed, related case in the District of Minnesota is the "dominant" factor to be considered, and that it greatly weighs in favor of transfer because "(1) pretrial discovery can be conducted with more efficiency; (2) the witnesses can be saved time and money, both with respect to pretrial and trial proceedings; (3) duplicitous litigation can be avoided, thereby eliminating unnecessary expense to the parties and at the same time serving the public interest; and (4) inconsistent results can be avoided". (ECF No. 13 at 8.)

Courts have recognized that the presence of an earlier-filed, related case in the transferee forum bears considerable weight in determining whether transfer is appropriate. "The presence of two related cases in the transferee forum is a substantial reason to grant a change of venue. The interests of justice and the convenience of the parties and witnesses are ill-served when federal cases arising out of the same circumstances and dealing with the same issues are allowed to proceed separately." *Prudential Ins. Co. of Am. v. Rodano*, 493 F. Supp. 954, 955 (E.D. Pa. 1980). Actions can be considered to be related when an action "grows out of the same transaction as another pending action… The cases need not be identical to be related." *Montgomery v. Schering-Plough Corp.*, No. 07-194, 2007 WL 614156, at *3 (E.D. Pa. Feb. 22, 2007). All four pending opt-out cases arose from the settlement group created in *Dryer v. Nat'l Football League*, 689 F. Supp. 2d 1113 (D. Minn. 2010). Plaintiffs' claims of false endorsement, publicity rights, and unjust enrichment mirror the claims asserted in the *Dryer* opt-out case in Minnesota filed at No. 09-CU-02182, D. Minn. Further, the NFL Defendants assert the same defenses in the actions before this Court as they do in *Dryer*, and have already conducted a great amount of discovery in the District of Minnesota. (ECF No. 13 at 10.)

In the Memorandum of Law in Support of their Motion to Transfer, the NFL Defendants cite numerous cases in which actions were transferred due to the presence of an earlier-filed, related case in another district. (ECF No. 13 at 7-9.) In response, Plaintiffs aver that the present actions can be distinguished from these cases because the cited cases involved: "more related cases in the transferee forum; cases filed relatively contemporaneously hence enabling efficient joint litigation; and/or other compelling *Jumara* factors favoring transfer." (ECF No. 16 at 11.)

The Court recognizes that some of the cases cited by the NFL Defendants do involve situations where there are a greater number of related cases in the transferee forum. The number of related cases in the transferee forum, however, is not dispositive in the decision of whether or not transfer is appropriate. Several of the cited cases feature only one earlier-filed, related case in the transferee forum. (ECF No. 13 at 7-9.) Further, the cited cases never mention the number of related cases as a deciding factor; only whether an earlier-filed, related case was present in the transferee forum. The Court must consider the presence of at least one earlier-filed, related case as favoring transfer due to the expense of time, energy and money that would result from having the same issues heard concurrently in two different districts. It is not entirely clear what Plaintiffs mean by "efficient joint litigation." "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts, leads to the wastefulness of time, energy, and money." *EMS Acquisition Corp. v. Structure Probe Inc.*, No. 07-03084, 2008 WL 375108, at *6 (E.D. Pa. Feb. 11, 2008) (citing *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)).

Because the *Dryer* opt-out action has been continued (ECF No. 20 at 2), Plaintiffs' argument, that the possibility of efficient joint litigation due to the contemporaneity of filing distinguishes Defendants' cited cases from the present action, is misguided. Plaintiffs claim that

because the trial date for *Dryer* had been set and the case has already been pending for four-and-one-half years, that they would be unable to coordinate discovery, save certain witnesses from having to testify twice, or avoid a duplicate trial. (ECF No. 16 at 12.) Because the Special Master in the *Dryer* opt-out action has stated that the trial would not go on as scheduled and has extended the schedule (ECF No. 20 at 2), it seems that these concerns are unpersuasive as these opt-out actions can be coordinated if Plaintiffs' action is transferred. If not, and the *Dryer* opt-out action proceeds before this case can be joined with it, transfer would still be appropriate because the *Jumara* factors also weigh in favor of transfer.

Even if the NFL Defendants overstate the familiarity and knowledge of Judge Magnuson and the Minnesota District Court with regard to the factual record, as Plaintiffs claim, it is undeniable that the Minnesota District Court has a long history and familiarity with the facts, parties, and evidence which this Court does not currently possess. This is because the Minnesota District Court presided over the original *Dryer* case (*Dryer v. Nat'l Football League*, 689 F. Supp. 2d 1113 (D. Minn. 2010)) and is now presiding over the most advanced of the opt-out actions (*Dryer v. Nat'l Football League*, No. 09-CU-02182, D. Minn.).

In addition, even Plaintiffs concede that the risk of having their action heard in a separate forum from *Dryer* could result in inconsistent results. (ECF No. 16 at 12.) They argue that this Court could consider the decision of the Minnesota District Court when making its decision. *Id*. This seems to be an acknowledgment of the similarity of the actions and also favors transfer.

Plaintiffs' action arises from the same prior class action as the *Dryer* opt-out action currently before Judge Magnuson in the District of Minnesota. Further, they name identical defendants who assert identical defenses and their action involves the same claims of false endorsement, publicity rights, and unjust enrichment as found in *Dryer*. It would be a waste of

judicial resources to have these substantially similar cases heard in two different jurisdictions. This is especially true when one considers the risk of inconsistent decisions presented by this situation. "It is well-settled that the presence of a related case in the proposed transferee forum is a strong reason to grant a motion for a change of venue." *Schiller-Pfeiffer, Inc. v. Country Home Products, Inc.*, No. Civ. A. 04-CV-1444, 2004 WL 2755585, at *8 (E.D. Pa. Dec. 1, 2004). Accordingly, the presence of an earlier-filed, related case in Minnesota weighs heavily in favor of transfer to the District of Minnesota.

### 3. Private *Jumara* Factors

#### a. Parties' Choice of Forum

Ordinarily, courts will defer to the plaintiff's choice of forum, *Jumara*, 55 F.3d at 880, especially where the plaintiff's choice is his home forum. *Stillwagon*, 2013 WL 1180312, at *26 (citing *Samsung SDI Co., Ltd. v. Matsushita Elec. Indus. Co.*. 524 F.Supp. 2d 628, 631 (W.D.Pa. 2006)). Plaintiffs argue that their choice of forum should be given supreme deference in this matter. Although the plaintiff's choice of forum is the most important *Jumara* factor, it becomes significantly less so when the district is not the home forum of the plaintiff and most of the alleged activity did not occur there. *Mitel Networks Corp.*, 943 F.Supp. 2d at 467. The Western District of Pennsylvania is not the home forum of 612 of the 630 Plaintiffs in this case. (ECF No. 20 at 4.) Because the alleged activity giving rise to the claims occurred in all fifty states, and because the vast majority of the Plaintiffs cannot claim this District as their home forum, this factor is neutral under the *Jumara* balancing test.

The NFL Defendants prefer that these cases be transferred to the District of Minnesota, where personal jurisdiction exists and venue is proper. This factor weighs in favor of transfer.

      **b.**  **Convenience/Physical and Financial Condition of the Parties**

  The convenience of the parties with regard to transfer is a neutral *Jumara* factor. The NFL Defendants assert that Minnesota, a more geographically centralized state than Pennsylvania, is a more suitable location because it can better accommodate witnesses from both coasts. (ECF No. 13 at 12.) This argument fails to persuade because, as Plaintiffs argue, the availability of airline travel makes both Pennsylvania and Minnesota equally viable and convenient locations for witnesses and the parties. (ECF No. 16 at 5.) The NFL Defendants further argue that the overall cost of opt-out litigation will be reduced if all of the opt-out actions are coordinated in a single district. *Id*. Plaintiffs assert that because the NFL has litigated in this District before, it is clearly a convenient location for them. While this may be true, the NFL has also litigated in the District of Minnesota in the past, making both the Western District of Pennsylvania and the District of Minnesota convenient. Plaintiffs further argue that because their counsel is located in Pennsylvania, transfer would entail a significant increase in expense. However, "the location of counsel carries little, if any, weight in an analysis under § 1404(a)." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Because Minnesota and Pennsylvania are both equally convenient forums, this factor is neutral.

      **c.**  **Locus of Original Claims**

  The parties agree that the "whether the claims arose elsewhere" factor is neutral because the alleged claims arose across the country. The claims arose in the many states where the teams that the Plaintiffs played for were headquartered or travelled to, where the game footage was filmed, and where the finished NFL Films' productions were broadcasted.

### d.     Convenience of the Witnesses

The Court must also consider the convenience of witnesses, but only to the extent that they may be unavailable to appear in one of the locations. *Jumara*, 55 F.3d at 880. In their opening brief, the NFL Defendants concede that the witnesses in this case will be available in either fora, but argue that where an earlier-filed, related case in another district exists, courts generally consider duplicative witness appearances as favoring transfer. (ECF No. 13 at 13.) In response, Plaintiffs claim that duplicative appearances are inevitable even if this case is transferred because Plaintiffs would not be prepared for the June trial date set for the *Dryer* opt-out case by Judge Magnuson in Minnesota. (ECF No. 16 at 6.) Because the *Dryer* opt-out trial date has been continued, it may be possible to avoid duplicative witness appearances. (ECF No. 20 at 5.) This factor favors transfer.

### e.     Location of Books and Records

It is not disputed that documents could be produced either here or in Minnesota. Nonetheless, the NFL Defendants argue that the risk of duplicative document discovery favors transfer to Minnesota, to which Plaintiffs respond that they have no intention of altering their discovery regardless of where the trial is conducted. Because of this assertion, this factor is likely neutral.

### 4. Public *Jumara* Factors

### a.     Enforceability of the Judgment

The parties agree that this is a neutral *Jumara* Factor.

### b.     Practical Considerations that Could Make the Trial Easy, Expeditious, or Inexpensive

The NFL Defendants argue that the *Jumara* factor of "practical considerations that could make the trial easy, expeditious, or inexpensive" overwhelmingly favors transfer because there is

10

an expansive factual record in the District of Minnesota and the Minnesota District Court is intimately familiar with the issues at hand. (ECF No. 13 at 13.) In response, Plaintiffs contend that the expansive factual record developed in the *Dryer* opt-out action could be easily and inexpensively transferred to this District in electronic form. (ECF No. 16 at 7.) Plaintiffs further argue that litigating in Minnesota will be more expensive for them because their counsel is located here. *Id*. The argument regarding counsel's location is unpersuasive because "the location of counsel carries little, if any, weight in an analysis under § 1404(a)." *Shutte*, 431 F.2d at 25. Plaintiffs claim that because there have only been 20 pages of substantive opinion by the Minnesota District Court in *Dryer*, this Court should be able to easily familiarize itself with the issues of the case. Regardless of how many pages of opinion Judge Magnuson has written, it cannot be disputed that he is vastly more familiar with the facts and legal arguments presented than the undersigned. Further, consolidating this action with the more advanced *Dryer* opt-out action following transfer is likely to result in a more expeditious trial. This factor weighs in favor of transfer.

          c.      **Relative Administrative Difficulty Resulting from Court Congestion**

Plaintiffs assert that "the administrative difficulty in the two fora resulting from court congestion" weighs in favor of denial of transfer, relying on the fact that the Minnesota District Court has nearly 50% more pending cases than the Western District of Pennsylvania and over twice as many pending cases per judgeship (575 versus 277). (ECF No. 16 at 7.) Defendants contend that it will significantly ease court congestion to handle all of the opt-out litigation in one district. (ECF No. 13 at 13-14.) In addition, the NFL Defendants submit that "the District of Minnesota is currently experiencing considerably less baseline docket congestion than this District, particularly for cases requiring court action for resolution." *Id*. While the Court

recognizes that it would be more efficient for these cases to be heard in one district, it is also true that transfer would cause more congestion for the District of Minnesota. Thus, this *Jumara* factor is neutral.

### d. Local Interest in Deciding Local Controversies at Home

The parties agree that this is a neutral *Jumara* Factor.

### e. Public Policies of the Fora

The parties agree that this is a neutral *Jumara* Factor.

### f. Familiarity of the Trial Judge with Applicable State Law

"The familiarity of the trial judge with the applicable state law in diversity cases" factor weighs slightly in favor of transfer. Defendants submit that Judge Magnuson has been presiding over the *Dryer* opt-out case for four-and-one-half years and has familiarized himself with the substantive laws of dozens of states in connection with the class action. (ECF No. 20 at 2-3.) Plaintiffs counter that the NFL Defendants' argument is not supported by the record in the *Dryer* case. (ECF No. 16 at 8.) In the four-and-one-half years that the *Dryer* opt-out action has been pending, the Minnesota District Court has addressed substantive law twice, wherein the substantive laws of three states (California, Minnesota and Missouri) were analyzed. *Id*. Although this Court could familiarize itself with the rulings of the District Court of Minnesota, this factor weighs slightly in favor of transfer.

### III.     CONCLUSION

For all the above reasons, the NFL Defendants have met their burden of showing that "the convenience of the parties and witnesses, and the interest of justice weigh in favor of [a] transfer" to the District of Minnesota, which is unquestionably the more proper and convenient forum.

For the reasons set forth above, the Court will grant the Motion to Transfer Venue (ECF No. 14) filed by the NFL Defendants pursuant to 28 U.S.C. §1404(a).

An appropriate order will follow.

Dated:   April 24, 2014                                                         BY THE COURT:

                                                                                                  /s/ Lisa Pupo Lenihan
                                                                                                  LISA PUPO LENIHAN
                                                                                                  Chief United States Magistrate Judge